# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-3906

_____

Willa Jari Lovett, by and through    *
Willa Jaunice Lovett, her natural    *
mother, acting as the Guardian of    *
the Person and the Estate of Willa    *
Jari Lovett, by next friend, Willa    *
Juanice Lovett;    *  Appeal from the United States
   *  District Court for the
        Appellant;    *  Western District of Arkansas.
   *
        v.    *
   *
Union Pacific Railroad Company;    *
Chrysler Corporation, a Delaware    *
corporation;    *
   *
        Appellees.    *

_____

Submitted:  September 13, 1999

Filed:  January 19, 2000

_____

Before WOLLMAN, Chief Judge, and HEANEY and LOKEN, Circuit Judges.

_____

HEANEY, Circuit Judge.

      Willa Jari Lovett sued DaimlerChrysler Corp. (Chrysler) and Union Pacific Railroad Company (Union Pacific) for injuries she sustained when the Chrysler Jeep

Cherokee she was a passenger in collided with a Union Pacific locomotive. The jury returned a verdict in favor of both defendants. Lovett raises five issues on appeal. She contends that the district court erred by: (1) admitting evidence of her failure to wear her seat belt, (2) excluding evidence of other similar incidents involving a Jeep Cherokee, (3) excluding evidence that Chrysler changed its rear-liftgate design, (4) refusing to give a cautionary instruction in response to Union Pacific's closing argument, and (5) granting summary judgment on Union Pacific's duty to keep a lookout. We affirm.

## I. Background

On February 5, 1995, 16-year-old Lovett rode in Molena Richey's 1985 Chrysler Jeep Cherokee with Richey and Kari Currier. Richey drove the vehicle; Currier was seated in the front passenger seat; and Lovett was seated in back.

The Cherokee approached a railroad crossing marked with a crossbuck and stop sign near Alma, Arkansas. As Richey neared the stop sign, she looked in both directions, but she did not see or hear an approaching Union Pacific train. As she started past the stop sign, the train, moving at a speed of 47 miles per hour, struck the left front of the Cherokee. The initial impact caused the vehicle to rotate in a clockwise direction and hit the right side of the train. This second impact continued the Cherokee's rotation, ultimately causing a third impact between the left rear corner of the Cherokee and the train's fuel tank. The Cherokee then flung away from the train and rolled over.

During the collision, the Cherokee's rear liftgate broke from the vehicle, and Lovett was ejected through the open liftgate area. She sustained permanent brain damage. Neither Currier nor Richey were ejected in the accident, and both suffered only minor injuries.

On October 3, 1996, Lovett sued Chrysler and Union Pacific in the Eastern District of Arkansas[1] for personal injuries she suffered in the accident. She alleged negligence and strict liability against Chrysler, and negligence alone against Union Pacific. After an eighteen-day trial, the jury returned a verdict for Chrysler and Union Pacific.

## II. Chrysler

With regard to Chrysler, Lovett appeals the district court's evidentiary rulings to: (1) admit evidence of her failure to use her seat belt, (2) exclude evidence of other similar incidents involving a Jeep Cherokee, and (3) exclude evidence that Chrysler changed its rear-liftgate design.

### A. Seat Belt Non-Use

Lovett first appeals the district court's denial of her motion in limine to exclude evidence of her seat belt non-use. In its pre-trial order denying Lovett's motion, the court stated:

> [T]he Court will permit Chrysler to attempt to prove its defense of *failure to wear a seat belt* on the limited issues of whether (1) its product is defectively designed and unreasonably dangerous or (2) whether Lovett's injuries are attributable to some cause other than the product design. Chrysler may not, however, attempt to prove that Lovett – arguably not even required by law to wear the seat belt – was negligent or at fault or contributed to or failed to mitigate her damages. Furthermore, Chrysler may not simply introduce evidence of Lovett's non-use of the seat belt in the absence of evidence tending to prove that Lovett's damages were caused by a source other than the alleged defective design. In other words, Chrysler may not just "throw" the seat belt evidence to the jury,

---

[1]The suit was later transferred to the Western District of Arkansas.

leaving jurors to speculate as to the proximate cause of her alleged injuries.

See Lovett v. Union Pac. R.R. Co., Civ. File No. 97-2036 (W.D. Ark. Oct. 7, 1998) (order denying plaintiff's motion in limine to exclude seat-belt evidence, at 5) (emphasis added).

Seat-belt evidence was admitted at trial over Lovett's objection. In her case-in-chief, Lovett called Officer Steven Roberts, who took a statement on the day of the accident from Molena Richey, in which Richey stated that neither Currier nor Lovett were wearing seat belts.

During Union Pacific's cross-examination of Roberts, it sought to admit the written statement into evidence. Lovett objected on hearsay grounds and because the statement contained evidence that she had not been wearing her seat belt. The court then discussed, outside of the jury's presence, a proposed limiting instruction, which read:

> Ladies and gentlemen of the jury, you are told that evidence concerning; one, whether seat belts were installed in the Jeep Cherokee at the time of the accident; and two whether, if installed, seat belts were in use by any of the occupants in the Jeep at the time of the accident may be considered by you only for the limited purposes of a) determining whether the Jeep is defectively designed and unreasonably dangerous, and/or b) determining whether plaintiff's injuries are attributable to some cause other than the design of the Jeep.

(Tr. Vol. II at 282-83.)

In response to the proposed instruction, Lovett's attorney stated: "Certainly I don't agree with it. I understand that [the proposed instruction is] the Court Order and *we would renew our objection which was made in our Motion in Limine*." (Id. at 283

-4-

(emphasis added).)  After admitting Roberts' written statement, the district court instructed the jury according to the limiting instruction.

At the close of trial, the court proposed the following jury instruction:

If you find that there was a design defect in the Jeep Cherokee, you are instructed the design defect subjects Chrysler Corporation to liability for only that portion of Ms. Lovett's damages or injuries which were proximately caused by the defective design.  That is, you are instructed that even if you find that there was a design defect in the Jeep Cherokee, Chrysler Corporation is not liable for any damage or injury which would have occurred as a result of the collision even in the absence of the defective design.

When I use the word "fault" in these instructions, I mean negligence and supplying a product in a defective condition.

. . . .

On February 5, 1995, there was no law in the state of Arkansas requiring a passenger in the back seat of a motor vehicle to wear a seat belt.  The failure to wear a seat belt may not be considered by you as evidence of fault -- on the part of the plaintiff with respect to her negligence claims.

The fact that the Jeep Cherokee was supplied with a seat belt may be considered solely in determining whether the vehicle was in a defective condition which rendered it unreasonably dangerous.

(Tr. Vol. X at 1995-96.)

Lovett objected to the district court's seat-belt instruction:

Your Honor, Instruction 25.  We are making this objection in line with our objection to any evidence being admitted about seat belt[s] in the first place.  And therefore to maintain consistency, *we're renewing our*

-5-

*objection that we first filed in limine* and brought throughout the trial; that there should not have been any evidence of seat belts in this trial and thus instructing the jury on seat belts is error.

(Tr. Vol. X at 1926 (emphasis added).) The court responded, "I take it then it is in the nature of a derivative objection and it arised [sic] from the objection made at trial to receive that evidence at all. But that being understood, does the plaintiff have any objection to the form of the instruction if it were to otherwise be –" (Id. at 1926-27.) Lovett then replied, "No sir. Reserving and preserving our original objection, we do not object to 25 in its present state." (Id. at 1927.)

After the district court instructed the jury as proposed, the case was submitted using a general verdict form to which Lovett did not object. The verdict form read, "Do you find from a preponderance of the evidence that there was fault on the part of Chrysler which was a proximate cause of the damages sustained by Willa Lovett?" The jury responded, "No."

Chrysler argues that we are precluded from reviewing the admissibility of the seat-belt evidence because Lovett failed to preserve her argument for appeal. We disagree. A motion in limine to exclude evidence is sufficiently preserved for appeal if the evidence is objected to at trial. See Aerotronics, Inc. v. Pneumo Abex Corp., 62 F.3d 1053, 1066 (8th Cir. 1995); see also United States v. Kandiel, 865 F.2d 967, 972 (8th Cir. 1989) (holding that a motion in limine to exclude evidence is insufficient to preserve a claim of error where the evidence is admitted at trial without objection). In addition to making her motion in limine, Lovett specifically objected to the admissibility of the seat-belt evidence at trial as demonstrated above. Thus, her objection was preserved, and we review her claim on the merits.

At the time of the accident Arkansas law provided that:

> The failure to provide or use a seat belt shall not be considered under any circumstances as evidence of comparative or contributory negligence or failure to mitigate damages, nor shall such failure be admissible as evidence in the trial of any civil action with regard to negligence. Neither shall the failure to provide or use seat belts be considered under any circumstances as evidence in any prosecution for negligent homicide.

Ark. Code Ann. § 27-37-703 (Michie 1994).[2]  Although the statute clearly prohibits evidence of seat belt non-use for Lovett's negligence claim, both the statute and Arkansas case law are silent on whether such evidence also is barred in strict-liability cases.  Thus, the district court was in the difficult position of predicting how the Arkansas Supreme Court likely would rule on the issue.

Lovett based her strict-liability claim against Chrysler on the "crashworthiness" theory.   Under the theory, vehicle manufacturers have a duty to design their vehicles to be "crashworthy," meaning to prevent "enhanced injuries" resulting from an accident.  See Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968); R. Ben Hogan, III., The Crashworthiness Doctrine, 18 Am. J. Trial Advoc. 37 (1994).  In a strict-liability crashworthiness case, the plaintiff claims that the manufacturer is liable only for that portion of the injury caused by the defective design.  See Larsen, 391 F.2d at 502.  In this case, Lovett alleged that the defectively designed liftgate enhanced her injuries beyond that which would have occurred from the vehicle's impact with the train, absent the defective liftgate.

---

[2]Approximately two months after the accident, the Arkansas Legislature amended § 27-37-703.  Because the accident giving rise to Lovett's claims occurred prior to the amendment, the pre-amended statute applies.

The district court noted that the law regarding the admissibility of seat-belt evidence in strict-liability crashworthiness cases is in a "state of flux."[3] <u>Lovett</u>, Civ. File No. 97-2036 (order denying plaintiff's motion in limine to exclude seat-belt evidence, at 4). The district court, however, determined that the Arkansas Supreme Court likely would adopt the reasoning set forth in <u>LaHue v. General Motors Corp.</u>, 716 F. Supp. 407 (W.D. Mo. 1989), holding that evidence of seat belt non-use is admissible in strict-liability crashworthiness cases. "We review <u>de novo</u> a district court's determination of how a forum state's highest court would decide a novel legal issue or cause of action." <u>Horstmyer v. Black & Decker, (U.S.), Inc.</u>, 151 F.3d 765, 772 (8th Cir. 1998).

We need not decide whether the district court correctly determined that the Arkansas Supreme Court would follow <u>LaHue</u> or the cases cited in footnote three of this opinion because Lovett has failed to prove that she was prejudiced by the admission of the seat-belt evidence. Where the district court errs in admitting evidence, we will only grant a new trial or set aside a verdict if there is clear and prejudicial abuse of discretion. <u>See</u> <u>First Sec. Bank v. Union Pac. R.R. Co.</u>, 152 F.3d 877, 879 (8th Cir. 1998) (citing <u>Pittman v. Frazer</u>, 129 F.3d 983, 989 (8th Cir. 1997)); <u>see also</u> Fed. R. Civ. P. 61 (stating reversal based on an improper evidentiary ruling is allowed only if "substantial rights" were affected). An abuse of discretion occurs when the error prejudicially influences the outcome. <u>See</u> <u>United States v. Beasley</u>, 102 F.3d 1440, 1452 (8th Cir.1996).

---

[3]Many courts interpret seat-belt statutes to permit evidence of seat belt non-use in a strict-liability crashworthiness case. <u>See</u> <u>LaHue v. General Motors Corp.</u>, 716 F. Supp. 407 (W.D. Mo. 1989); <u>General Motors Corp. v. Wolhar</u>, 686 A.2d 170 (Del. 1996); <u>Lowe v. Estate Motors Ltd.</u>, 410 N.W.2d 706 (Mich. 1987). Others do not. <u>See</u> <u>DePaepe v. General Motors Corp.</u>, 33 F.3d 737 (7th Cir. 1994); <u>Olson v. Ford Motor Co.</u>, 558 N.W.2d 491 (Minn. 1997); <u>Whitehead v. American Motors Sales Corp.</u>, 801 P.2d 920 (Utah 1990).

To determine whether evidence of Lovett's seat belt non-use prejudicially influenced the outcome, we look to the jury's verdict. The unobjected-to verdict form submitted to the jury read: "Do you find from a preponderance of the evidence that there was fault on the part of Chrysler which was a proximate cause of the damages sustained by Willa Lovett?" The jury responded "No."

We have no way of determining from this general verdict why the jury found Chrysler not liable. In particular, we cannot tell whether the jury determined that the Cherokee was defectively designed, but that the design defect did not cause Lovett's injuries. If we could, there would be force to Lovett's argument that the jury improperly considered her seat belt non-use to conclude that her injuries were her fault, and not Chrysler's, and thus we would be required to determine whether the district court erred in admitting the challenged evidence. Nonetheless, the case was submitted on a general verdict form, so we can only speculate whether Lovett was prejudiced. Speculation, however, is not a sufficient basis for finding a plaintiff's substantial rights were affected, and we will not set aside the jury's verdict in this case.

## B. "Similar Incidents" Evidence

Lovett next contends that the district court erred by excluding evidence of four similar incidents involving Jeep Cherokees. The district court excluded the evidence because the incidents were not "substantially similar" to Lovett's accident, noting that none: (1) involved a 1985 Cherokee, (2) involved a collision with a locomotive, (3) occurred at a railroad crossing, (4) resulted in the Cherokee rolling over, (5) occurred in a similar topographical area, and (6) involved similar speeds. (Tr. Vol. VI at 1177-85.) We will not grant a new trial or set aside a verdict based on an incorrect evidentiary ruling absent a clear and prejudicial abuse of discretion. See First Sec. Bank, 152 F.3d at 879.

Evidence of similar incidents may be relevant to prove the defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation. See Drabik v. Stanley-Bostitch, Inc., 997 F.2d 496, 508 (8th Cir. 1993). However, admitting similar-incident evidence also threatens to raise extraneous controversial issues, confuse the issues, and be more prejudicial than probative. See id. For these reasons, the facts and circumstances of the other incidents must be "substantially similar" to the case at bar to be admissible. See id. Based on our review of the record and the district court's reasoning, we are satisfied that the incidents were not "substantially similar" to Lovett's accident and that the district court correctly excluded them.

C. Design-Change Evidence

Lovett also appeals the district court's exclusion of evidence regarding Chrysler's 1994 decision to replace the fiberglass liftgate with one made from steel. The district court excluded the evidence after concluding that it was irrelevant under Ark. Code Ann. § 16-116-104 (Michie 1994), and that even if relevant, was barred by Federal Rule of Evidence 407. See Lovett, Civ. File No. 97-2036 (W.D. Ark. Oct. 14, 1998) (order denying Lovett's motion in limine to admit design-change evidence, at 1-2). Again, we review the district court's evidentiary ruling for a prejudicial abuse of discretion. See First Sec. Bank, 152 F.3d at 879.

We need not consider the grounds for the district court's decision because the design-change evidence is irrelevant and therefore was properly excluded. Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Lovett claims that the design-change evidence is relevant to prove that because the 1985 Jeep Cherokee's liftgate was manufactured from fiberglass, rather than steel, the vehicle was "supplied in a defective condition rendering it unreasonably dangerous" and "the defect caused Lovett's injuries."

(Appellant's Br. at 35-36.)  Chrysler contends, however, that the change is irrelevant because the decision was not made to improve the Cherokee's safety, but rather as a "quality upgrade" to make the liftgate less noisy and easier to operate.  (Appellee's Br. at 23.)

A careful review of the record reveals that the change apparently was made to improve quality, not safety.  Because the design change was not made to improve the vehicle's safety, it does not tend to prove that the fiberglass liftgate rendered the Cherokee defective.  Thus, the evidence is irrelevant and was properly excluded.

The only evidence in the record that the design change may have been related to safety is a memorandum written by William Grabowski, Executive Engineer for Body Engineering in Chrysler's Large Car Division.  In the memorandum, Grabowski notes two instances where the liftgate would "pop[] open during off-road driving." (Plaintiff's Ex. 5 at 5.)  Assuming for the sake of argument that these instances motivated Chrysler's design change, evidence of the change is still irrelevant because Lovett alleges that she was injured when the Cherokee's liftgate completely detached from the vehicle, not when the liftgate opened inadvertently.  Any change to prevent the liftgate from opening inadvertently does not tend to prove that the liftgate was defective because it was ripped off in a crash of the kind that occurred here.  Because the design change does not tend to prove the Cherokee was defective or that the defect caused Lovett's injuries, evidence of the change is irrelevant and was properly excluded by the district court.

### III.  Union Pacific

With regard to Union Pacific, Lovett appeals the district court's:  (1)  refusal to give a cautionary instruction in response to Union Pacific's closing argument, and (2) summary judgment grant on Union Pacific's duty to keep a lookout.

## A. Refusal to Give a Cautionary Instruction

Lovett first argues that the district court erred in overruling her objection to Union Pacific's closing argument and in denying her request for a cautionary instruction. Lovett claims that Union Pacific made an improper "Golden Rule" argument, which "turned a close case into a verdict for Union Pacific." (Appellant's Br. at 57.)

During its closing argument, Union Pacific stated:

Now for a minute let's take a totally hypothetical situation. Let's say that I'm a passenger in a car being driven by a friend; you're driving a car. It's hypothetical. And there's the intersection. My intersection's not that great but if you'll follow along with me as best you can. I'm a passenger in a car, my car is going this way, your car is coming this way. I'm going to put you and me – Let's say my car had a stop sign there at the intersection, all right? Now as you're driving through the intersection going this way, my car – the one that I'm riding in – pulls out and hits you and I'm hurt. And remember, anybody can sue anything for anything else. I don't sue my driver, I sue you. And we get lawyers and go to court and I say, you know, you didn't put your brakes on until after the accident happened. You'd say Scott, it doesn't matter; I had the right of way, you had the stop sign. I'd say well, okay, but you know, you weren't honking your horn at me early enough. You said Scott, yes, I was honking and other people heard it, and so did your driver. I said well, all right but, you know, you were going 47 miles an hour. And you would respond well, Scott, my speed limit was 50. I wasn't violating the law and I had the right of way. And then I said well, you know, my driver couldn't see because of the sun light. What would you say? Well, then he shouldn't have pulled out into the intersection. And finally I throw up my hands and I say well, I'm hurt, and you've got the ability to pay for my damages. I think you would say Scott, the accident's not my fault and I don't owe you anything. And we take our case to the jury, me against you, okay, under these facts. What should that jury do? Ask yourself that. Think about it.

> During deliberations you may hear someone say, you know, Ms. Lovett was hurt bad, real bad; and the railroad is a company and they have the ability to pay. The first thing I ask you to remember is that what if this was the lawsuit, me against you and I'm hurt and you had the ability to pay?

(Tr. Vol. X at 2023-24.) Lovett objected to the hypothetical on the ground that it referred to the jurors as defendants, and she requested a cautionary instruction. The court overruled Lovett's objection and denied her request for a cautionary instruction, stating, "I think it's a fair comment. Objection overruled." (Id.)

The district court has broad discretion to rule on the propriety of closing arguments, see Vanskike v. Union Pac. R.R. Co., 725 F.2d 1146, 1149 (8th Cir. 1984), and on how to instruct the jury, see Kostelec v. State Farm Fire & Cas. Co., 64 F.3d 1220, 1225 (8th Cir. 1995); Joan W. v. City of Chicago, 771 F.2d 1020, 1022-23 (7th Cir. 1985) (giving great deference to the trial judge's refusal to give a curative instruction after a Golden Rule argument because of the judge's superior vantage point). We will not disturb the district court's rulings absent an abuse of discretion. See Vanskike, 725 F.2d at 1149.

A Golden Rule argument asks the jury to place itself in the defendant's position. See Spray-Rite Serv. Corp. v. Monsanto Co., 684 F.2d 1226, 1246 (7th Cir. 1982), aff'd, 465 U.S. 752 (1984). Such an argument is universally condemned because it encourages the jury to "depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." Id.; Dole v. USA Waste Servs. Inc., 100 F.3d 1384, 1388 (8th Cir. 1996). As set forth above, Union Pacific made a Golden Rule argument in its closing statement. Despite the argument's hypothetical form, the parties were clearly identifiable as those in this case, and Union Pacific asked the jury to place itself in the position of the hypothetical defendant.

-13-

Although the Golden Rule argument may have been improper, Lovett has failed to demonstrate she was prejudiced. Following Lovett's objection to the argument, Union Pacific did not discuss the hypothetical. Furthermore, the court correctly instructed the jury on the claims against Union Pacific, on the burden of proof, and on what the jury could properly consider when rendering its verdict. The court instructed the jury that:

> You should not permit sympathy, prejudice or like or dislike of any party to this action or of any attorney to influence your findings in this case. In deciding the issues, you should consider the testimony of the witnesses and the exhibits received into evidence. . . .

> Opening statements, remarks during the trial, and closing arguments of the attorneys are not evidence but are made only to help you in understanding the evidence and applicable law. Any arguments, statements, or remarks of attorneys having no basis in the evidence should be disregarded by you.

(Tr. Vol. X at 1955.) Because Union Pacific did not refer to the hypothetical after Lovett's objection and because the court properly instructed the jury, we conclude Lovett was not prejudiced. Thus, the district court did not abuse its discretion by overruling her objection and by denying her request for a cautionary instruction.

### B. Summary Judgment on Union Pacific's Failure to Keep a Lookout

Lovett last appeals the district court's summary judgment grant on Union Pacific's duty to keep a proper lookout. We review a district court's summary judgment grant *de novo* to determine whether, viewing the evidence in a light most favorable to the non-moving party, a genuine issue of material fact exists. See Bryan v. Norfolk & Western Ry. Co., 154 F.3d 899, 901 (8th Cir. 1998). In this diversity case, we apply Arkansas substantive law to make this determination. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

-14-

Lovett alleges that Union Pacific was negligent in failing to keep a proper lookout. Arkansas law provides:

> (a)(1) It shall be the duty of all persons running trains in this state upon any railroad to keep a constant lookout for all persons, including licensees and trespassers, and property upon the track of any and all railroads.
>    (2) If any person or property is killed or injured by the neglect of any employee of any railroad to keep a lookout, the company owning or operating any railroad or its agents, servants, and employees shall be liable and responsible to the person injured for all damages resulting from neglect to keep a lookout.

Ark. Stat. Ann. § 23-12-907 (1994). To establish a prima facie case of negligence, the plaintiff must prove that: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach was the proximate cause of the plaintiff's injuries. See Union Pac. R.R. Co. v. Sharp, 952 S.W.2d 658 (Ark. 1997).

A train crew does not owe a duty to keep a lookout and take precautions to avoid injury until it becomes apparent that the traveler or pedestrian approaching a railroad track will not stop before placing himself in peril. See Northland Ins. Co. v. Union Pac. R.R. Co., 830 S.W.2d 850, 853 (Ark. 1992). In this case, both of the train's crew members testified that they never saw the Cherokee prior to impact. (Tr. Vol. II at 321, 339.) Thus, there was evidence the crew breached its duty to keep a lookout and take precautions.

The only issue before us is whether Union Pacific's breach proximately caused Lovett's injuries. Proximate cause is "that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." Sharp, 952 S.W.2d at 662 (quoting Ouachita Wilderness Inst., Inc. v. Mergen, 947 S.W.2d 780 (1997)). Arkansas cases hold that unless at the moment the crew's duty arose the train could have been sufficiently

-15-

slowed or stopped in time to avoid the collision, the failure to keep a lookout is not the proximate cause of the injury.[4] See Northland Ins., 830 S.W.2d at 853; St. Louis S.W. Ry. Co. v. Evans, 497 S.W.2d 692, 695 (Ark. 1973); Baldwin v. Brim, 91 S.W.2d 255, 256-57 (Ark. 1936). The evidence demonstrated, and Lovett does not dispute, that regardless of whether the train's crew kept a lookout, the train could not have stopped in time or slowed enough to avoid the collision. Thus, Union Pacific's failure to keep a lookout was not the proximate cause of Lovett's injuries.

Lovett argues that although the train could not have been stopped or sufficiently slowed, the train's crew could have sounded the whistle earlier to alert Richey of the approaching train. We are foreclosed from considering this argument. In addition to alleging failure to keep a lookout, Lovett also claimed that Union Pacific was negligent in failing to sound the whistle as the train approached the crossing. The issue of failure to sound the whistle was tried before the jury, and the jury returned a verdict in favor of Union Pacific. Because Lovett tried this issue before the jury and lost, she cannot now attempt to attach the argument to her lookout claim to save it from summary judgment.

Lovett does not dispute that, once the train crew's duty to keep a lookout arose, the train could not have stopped or sufficiently slowed to avoid its collision with the Cherokee. Thus, Union Pacific's failure to keep a proper lookout did not proximately cause Lovett's injuries, and the district court correctly granted summary judgment.

---

[4]We note the Arkansas Supreme Court's recent decision in Union Pacific Railroad Co. v. Sharp, 952 S.W.2d 658 (Ark. 1997), and distinguish it from this case. The Sharp court was asked only to determine whether sufficient evidence existed from which the jury could have concluded that Union Pacific was negligent, and not whether Sharp established proximate cause on a particular theory of negligence. Further, the court recognized its prior holdings that a lookout instruction is improper where the evidence established that the train could not have been stopped or slowed in time to avoid the collision. See id. at 662-63.

For the reasons set forth above, we affirm.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.