# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-4040

_____

| | |
|---|---|
| CHRISTINE J. NANNINGA, individually, and on behalf of Larry L. Nanninga and Scott M. Nanninga, and as personal representative of the estate of Bruce E. Nanninga, deceased; LARRY L. NANNINGA; SCOTT M. NANNINGA,         Plaintiffs - Appellants,        v.        THREE RIVERS ELECTRIC COOPERATIVE, a Missouri Corporation,         Defendant -Appellee. | * * * * * * * Appeal from the United States * District Court for the * Western District of Missouri * * * * * * * * * |

_____

Re-submitted: * November 1, 2000
Filed:  December 19, 2000

_____

_____

* Defendant filed a petition for rehearing and suggestion for rehearing en banc this panel's previous opinion.  On April 4, 2000, the Court ordered that the petition be held in abeyance until the Supreme Court of Missouri ruled upon the appeal in *Lopez v. Three Rivers Electric Cooperative, Inc.*, a case arising out of the same accident at issue here.  The Missouri Court subsequently issued its ruling on August 29, 2000, clarifying the applicable standard of care, and on October 30, 2000, we granted the petition for rehearing by the panel, vacating the opinion and judgment filed on February 8, 2000.

Before McMILLIAN and MURPHY, Circuit Judges, and TUNHEIM,[1] District Judge.

_____

TUNHEIM, District Judge.

On July 31, 1994, plaintiffs' decedent Bruce Nanninga, a flight engineer, was killed along with three other crew members when their CH-47 military helicopter struck a set of defendant's power lines strung approximately 100 feet over the Osage River in central Missouri. Nanninga drowned as a result of the accident, and his widow and children filed a wrongful death diversity action in the United States District Court for the Western District of Missouri. Plaintiffs filed suit in the Western Division, but the district court granted defendant's motion for intradistrict change of venue and transferred the action to the Central Division.

Meanwhile, the families of two of the three other crew members killed in the crash brought suit in Missouri state court. On May 7, 1998, after discounting for comparative fault on the part of the decedents, a jury awarded those plaintiffs $2,750,000 and $2,500,000, respectively.

On August 11, 1998, the jury in this action returned a verdict for defendant. The district court denied plaintiffs' motions for judgment as a matter of law and for a new trial and entered judgment for defendant. Plaintiffs' appeal raises the following issues: (1) whether the state court jury's finding of liability should collaterally estop defendant from contesting its liability in this case; (2) whether the district court correctly instructed the jury that defendant owed plaintiffs' decedent a duty of ordinary care; (3) whether the trial court erred in denying plaintiffs' motion for a change of venue; (4) whether the trial court erred in restricting plaintiffs' voir dire; (5) whether the trial court

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

erred in delaying its ruling on the issue of comparative fault; (6) whether the trial court erred in permitting evidence and argument relating to the decedents' violation of military regulations; (7) whether the trial court erred in permitting evidence that the United States Army paid for the replacement of the power lines; (8) whether the trial court erred in allowing testimony via affidavit; (9) whether the trial court adequately instructed the jury concerning media publicity; and (10) whether the verdict was against the weight of the evidence.[2]  We affirm.

## A.    The Applicable Standard of Care

Plaintiffs contend that, under Missouri law, defendant owed a duty of the highest degree of care because defendant is supplier of electricity.  We review the district court's determination of state law de novo, *see Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991); *First Bank v. Hogge*, 161 F.3d 506, 510 (8th Cir. 1998), and we are bound by the highest state court's pronouncement of state law, *see B.B. v. Continental Ins. Co.*, 8 F.3d 1288, 1291 (8th Cir.  1993).

As noted above, in the parallel state court case, the Missouri Supreme Court determined that ordinary care is the correct standard of care in the circumstances of this case.  *See Lopez v. Three Rivers Elec. Coop.*, 26 S.W.3d 151, 158 (Mo. 2000).  We therefore affirm the trial court's instruction on the standard of care.

---

[2]The parties also bring several motions.  Both parties move to supplement the appellate record with material from the state court case; neither party has responded to the other's motion.  Accordingly, both motions are granted.  Plaintiffs also bring a motion to certify the question of the proper standard of care to the Missouri Supreme Court, or in the alternative, for a stay pending the appeal of the state court case.  As the Missouri Supreme Court has now ruled on the proper standard of care, plaintiffs' motion is denied as moot.

**B.    Collateral Estoppel**

In their motion for judgment as a matter of law and again in their motion to renew request for judgment as a matter of law, plaintiffs argued that defendant should be collaterally estopped from contesting its liability because the state court jury found defendant liable. The district court declined to apply collateral estoppel because the state court applied a different standard of care, the plaintiffs could have intervened in the state case, and the state court submitted the issue of the decedents' comparative fault to the jury, whereas the district court determined that there was no basis for comparative fault.

The application of collateral estoppel in diversity cases is determined according to state law. *See Jaramillo v. Burkhart*, 999 F.2d 1241, 1243 (8ᵗʰ Cir. 1993). In Missouri, trial courts have broad discretion in permitting the offensive use of collateral estoppel. *See State v. Daniels*, 789 S.W.2d 243, 245 (Mo. Ct. App. 1990). Previously, we concluded that the district court did not abuse its discretion in refusing to apply collateral estoppel because the issues in the two cases were not identical and plaintiffs could have joined the state case. *See Nanninga*, 203 F.3d at 535. Because the Missouri Supreme Court has reversed the judgment of the state trial court, there is now an additional reason to affirm the district court's refusal to apply collateral estoppel. Before the doctrine may be applied, a final judgment on the merits must have been rendered involving the same claim or issue sought to be precluded. *See Robin Farms, Inc. v. Beeler*, 991 S.W.2d 182, 185 (Mo. Ct. App. 1999). In Missouri, when an appellate court vacates a judgment, the lower court's judgment cannot be considered a final judgment on the merits for purposes of collateral estoppel. *See State v. Nunley*, 923 S.W.2d 911, 922 (Mo. 1996). For this reason and the reasons articulated in our previous decision, therefore, we conclude that the district court did not abuse its discretion in refusing to give collateral estoppel effect to the state court judgment.

## C.    Change of Venue

Plaintiffs initially filed this lawsuit in the Western Division of the Western District of Missouri in Kansas City. The district court granted defendant's motion for intradistrict change of venue and the case was assigned to the Central Division in Jefferson City. The district court denied plaintiffs' motion for a change of venue back to Kansas City. Plaintiffs argue that the jurors in Jefferson City were biased in favor of defendant because they were members of electrical cooperatives.

The district court's denial of a motion for a change of venue is reviewed for abuse of discretion. *See Shapiro v. Kauffman*, 855 F.2d 620, 621 (8th Cir. 1988). The party challenging the impartiality of the jurors has the burden of showing that particular jurors hold opinions that raise a presumption of partiality. *See id.* Plaintiffs have failed to make this showing. Other than the adverse verdict, they point to nothing that could call the jurors' impartiality into question. The district court did not abuse its discretion in permitting the action to remain in Jefferson City.

## D.    Voir Dire

Plaintiffs argue that the district court abused its discretion in limiting voir dire both in time and scope. Defendant first contends that because the plaintiffs did not object to the twenty minute time limit on voir dire, we must review that issue for plain error. Although the record does not reflect whether plaintiffs objected to the time limit, under either standard of review the district court did not err in limiting voir dire in time or scope.

District courts have broad discretion in determining what questions will be asked during voir dire. *See Ratliff v. Schiber Truck Co.*, 150 F.3d 949, 956 (8th Cir. 1998).

Plaintiffs cite specific questions that they ought to have been allowed to ask, concerning such topics as holding companies accountable, placing a monetary value on human life, and media coverage of an unrelated military plane crash in Italy. While the district court denied some of plaintiffs' questions, the court and plaintiffs' counsel together covered the following topics: the jurors' background, ability to serve, prior jury service, and familiarity with the case and witnesses; whether any jurors were users or members of defendant; juror familiarity with defendant's insurance carrier; monetary awards in lawsuits; military and aviation experience; opinions about compensating for a loss of life with money; and feelings about lawsuits being brought against a company. These questions touched on nearly all the areas plaintiff contends should have been covered during voir dire, and we are unable to conclude that the time limit or the restrictions were an abuse of discretion.

## E.    Comparative Fault

On the fourth day of trial, the district court determined that it would not instruct the jury on comparative fault. Plaintiffs argue that the district court erred in not making this determination earlier and in subsequently permitting defendant to present evidence and argument concerning the pilots' violations of military and civilian flight rules. Plaintiffs assert that had the trial court ruled on the comparative fault issue earlier and properly enforced its ruling, no evidence concerning these alleged violations would have been permitted. The record does not reflect whether plaintiffs objected either to the timeliness of the ruling or the subsequent admission of evidence; regardless of the standard of review, however, the district court did not err in admitting this evidence, because it was relevant to defendant's argument that its alleged negligence was not the cause of the accident. *See Whisenand v. McCord*, 996 S.W.2d 528, 531 (Mo. Ct. App. 1999) (explaining that a defendant may introduce any evidence that tends to establish that it is not liable for negligence, including evidence that a third party caused the accident).

**F. Evidence that the Army Paid to Replace Power Lines**

Plaintiffs contend that defendant violated a stipulated motion in limine to exclude testimony that the Army reimbursed defendant for the replacement of its power lines. Although the district court instructed the jury to disregard the testimony, which consisted simply of an affirmative answer to a single question, plaintiffs argue that the district court should have further rebuked defense counsel and its failure to do so prejudiced plaintiffs. The record does not show that plaintiffs requested an admonition, nor does it reflect the existence of any such stipulation, other than a reference in plaintiffs' written motions in limine. Furthermore, the transcript indicates that defense counsel elicited this testimony only after plaintiffs' counsel first asked the witness about the cost of replacing the lines. While counsel's misconduct may in some cases be so prejudicial as to require a new trial, *see Sanders-El v. Wencewicz*, 987 F.2d 483, 485 (8th Cir. 1993), we conclude that under these circumstances the district court's instructions to the jury adequately cured any prejudicial effect this testimony may have had.

**G. Admission of Evidence by Affidavit**

Plaintiffs contend that the district court erred in admitting seventeen affidavits into evidence. The affidavits disputed the testimony of Mike Harp, whose state court testimony was read into evidence after the district court determined that he was an unavailable witness. Absent a stipulation of the parties, affidavits may not be treated as evidence. *See Eames v. Eames*, 463 S.W.2d 576, 579 (Mo. Ct. App. 1971). Defendant contends that plaintiffs agreed to the admission of the affidavits in return for the court's ruling admitting Harp's former testimony. The parties indicate that the following colloquy occurred between court and counsel:

> Madden: Judge, we would like to use the affidavits attached to the summary judgment, and we

|                             |                                                                                              |
|-----------------------------|----------------------------------------------------------------------------------------------|
|                             | would also like to call one live witness on that issue.                                      |
| The Court:                  | I'll do it.                                                                                   |
| Cloon [plaintiffs' counsel]: | They can have that in their case.                                                            |
| The Court:                  | Huh?                                                                                          |
| Cloon:                      | You mean in their case?                                                                       |
| The Court:                  | Yeah.                                                                                         |
| Cloon:                      | Okay.                                                                                         |
| The Court:                  | Yeah.                                                                                         |
| Cloon:                      | But I'm just going to read, and if they want to read their cross-examination, I guess, they can do that. |
| Virtel:                     | Yeah.                                                                                         |
| Cloon:                      | But then in their case in chief.                                                             |
| Virtel:                     | Yeah, right.                                                                                  |
| Cloon:                      | Okay.                                                                                         |

While the meaning of this dialogue is somewhat difficult to decipher, it is consistent with defendant's contention that plaintiffs agreed to permit the introduction of the affidavits. Such an interpretation is further bolstered by the fact that plaintiffs did not raise this issue in their motion for a new trial. Accordingly, the district court did not err in admitting the affidavits.

## H. Failure to Give Cautionary Instructions

On the second day of trial, plaintiffs' counsel reported to the district court that on the previous night the local news aired a story on their case in conjunction with a report concerning an unrelated plane crash in Italy wherein the pilots were criminally prosecuted for violating military regulations. Plaintiffs assert that the district court erred in failing to inquire whether the jurors had seen the broadcast and in failing to instruct them as to the distinctions between the two cases.

Whether to give a cautionary instruction is within the discretion of the district court, *see Stineman v. Fontbonne College*, 664 F.2d 1082, 1087 (8th Cir. 1981), and we will not disturb its rulings absent an abuse of discretion, *see Lovett v. Union Pacific R.R. Co.*, 201 F.3d 1074, 1082 (8th Cir. 2000). Here, the district court instructed the jury not to read or view any media reports concerning this case, and plaintiffs offer no evidence that the jurors were exposed to the allegedly prejudicial broadcast. *Cf. Lovett*, 201 F.3d at 1083 (affirming the district court's refusal to give cautionary instruction where the plaintiff failed to demonstrate prejudice). Moreover, plaintiffs failed to present a transcript or a videotape of the broadcast either to the district court or this Court. Instead, they rely on counsel's recollection of the coverage. Under these circumstances, we are unable to say that the district court abused its discretion in refusing to give a specific cautionary instruction.

## I. Weight of the Evidence

Plaintiffs appeal the district court's denial of their motion for a new trial on the basis that the verdict was against the great weight of the evidence. We review the district court's denial of a motion for a new trial under Fed. R. Civ. P. 59 for abuse of discretion. *See Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1338 (8th Cir. 1997). Where the district court's denial of the motion is based on its conclusion that the verdict is not contrary to the weight of the evidence, its holding is "virtually

unassailable." *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 656 (8th Cir. 1997). Here, defendant offered evidence that it was not negligent in failing to mark its lines because the lines and supporting structures were visible and the lines were too low to present an unreasonable risk. Alternatively, even if the jury concluded that defendant was negligent, it might have determined that the pilot was negligent in flying too low and that this negligence was the cause of the accident. We thus discern no abuse of discretion in the district court's denial of plaintiffs' motion.

For these reasons, the judgment of the district court is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.