KAREN NELSON MOORE, Circuit Judge,
dissenting.
I dissent because I believe that the prosecutor’s remarks were plainly improper, plainly flagrant, and plainly prejudicial. I would vacate Robert Poandl’s conviction and remand the case for a new trial.
*368 Poandl acknowledges — as he must — that he did not object to most of the prosecutor’s improper remarks, except for one instance. When the prosecutor asked the jury to think about the details they would remember if they had been raped by a priest, the defense counsel objected, and there was a sidebar in which the district court warned the prosecutor that she was “this close to asking the jurors to put themselves in the position of this kid” R. 68 at 80-81 (Trial Tr. 9/19/13) (Page ID # 806-07). The district court did not give the jury a curative instruction, and defense counsel did not request one. See id. at 81 (Page ID # 807). Because Poandl did not object to any of the other comments he now challenges, we review his prosecutorial-misconduct claim for plain error. United States v. Boyd, 640 F.3d 657, 669 (6th Cir.2011).
“[T]he plain-error doctrine of Rule 52(b) should be used only to correct particularly egregious errors.... ” United States v. Davis, 514 F.3d 596, 615 (6th Cir.2008). To show that the prosecutor’s statements constituted plain error, Poandl must show that the comments were plainly improper and affected his substantial rights. See id. In other words, the error must have “affected the outcome of the district court proceeding.” Id. (internal quotation marks omitted). If Poandl meets that burden, then we may exercise our discretion if “the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.” Id. (internal quotation marks omitted).
We review claims of prosecutorial misconduct in two stages. “First, we determine whether the statements were improper.” Boyd, 640 F.3d at 669. Second, we determine whether the prosecutor’s remarks were “flagrant.” Id.
Poandl contends that the prosecutor made two types of improper arguments. First, Poandl argues that the government made inflammatory appeals to sympathy for David Harper and played on jurors’ fears that Poandl would hurt other children. Appellant Br. at 52. Second, Poandl argues that the government minimized the burden of proof. Id. at 58-62. I agree with my colleagues that the second category of comments was not improper or flagrant.
I. IMPROPRIETY
A. Inflaming the Passions and Prejudices of Jurors
It is well established that prosecutors “must obey the cardinal rule that a prosecutor cannot make statements calculated to incite the passions and prejudices of the jurors.” Broom v. Mitchell, 441 F.3d 392, 412 (6th Cir.2006) (internal quotation marks omitted). The Supreme Court has explained that prosecutors must temper their arguments to avoid unfair trials because “[the prosecutor] is the representative not of an ordinary party to' a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.” Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Accordingly, prosecutors “may strike hard blows,” but they may not “strike foul ones” in the form of “improper suggestions, insinuations and, especially, assertions of personal knowledge,” which “carry much weight against the accused when they should properly carry none.” Id.
For that reason, it is improper for a prosecutor to state or imply that the defendant will commit future crimes. Broom, 441 F.3d at 413; see also Bates v. *369 Bell, 402 F.3d 635, 643-44 (6th Cir.2005) (holding that comments that if jurors acquit, then they are “accomplices” to future murders were improper). It is improper to “appeal[ ] to the national or local community interests of jurors,” meaning that prosecutors may not “urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking.” United States v. Solivan, 937 F.2d 1146, 1152-53 (6th Cir.1991) (internal quotation marks omitted). Appeals to community interests are particularly problematic when the prosecutor references controversial, contemporaneous events. Id. at 1153 (holding that comments that implied that the drug trade would continue if the jury did not convict the defendant were improper); United States v. Barker, 553 F.2d 1013, 1025 (6th Cir.1977) (holding that it was improper for the prosecutor to tell the jury that if they acquit the defendant of bank robbery, that is like opening all the banks and saying, “Come on and get the money, boys, because we’ll never be able to convict them.”). And it is improper for the government to “exhort the jury to ‘do its job’ ” and convict the defendant. United States v. Young, 470 U.S. 1, 18, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).
The criminal charges in this case are particularly likely to arouse anger and disgust. In general, “[c]ases involving sexual abuse exert an almost irresistible pressure on the emotions of the bench and bar alike. Because such cases typically turn on the relative credibilities of the defendant and the prosecuting witness, however, a strict adherence to ... appropriate prosecutorial conduct is required to ensure a fair trial.” Martin v. Parker, 11 F.3d 613, 616-17 (6th Cir.1993). In recent years, there has been extensive national coverage of numerous allegations that Catholic priests have sexually abused children. Sexual-abuse cases are always emotionally charged, but the large number of allegations of sexual abuse by Catholic priests may cause jurors to feel like they must do something to stop the problem — particularly in light of the coverage about the Catholic Church’s alleged failure to respond. Thus, given the extraordinarily emotional nature of this case, it was incumbent on the prosecutors to toe the line between hard and foul blows.
Poandl argues that the prosecutor crossed that line numerous times. In particular, Poandl cites the way the government created and exploited its theme: trust — the trust Poandl received from the Harpers, the trust Poandl allegedly exploited, and the trust David Harper placed in the jury. See, e.g., R. 68 at 22, 30 (Trial Tr. 9/19/13) (Page ID # 748, 756). The government touched on this trust theme early and often. During opening statements, the prosecutor told the jury that the evidence the government planned to present was “about the trust that was gained from Bob Poandl, the trust that was exploited by Bob Poandl, the trust that was broken by Bob Poandl. And the trust that is requested ... and that’s the trust that David Harper is going to ask you to give him.” R. 66 at 34 (Trial Tr. 9/16/13) (Page ID # 694). During summation, the government revisited this theme. R. 68 at 27 (Trial Tr. 9/19/13) (Page ID # 753). At the beginning of summation, the prosecutor showed the jury a picture of ten-year-old David Harper and told the jury that “[a]t the time of this photograph, he was taken by a man he trusted, a man his family trusted ... from his home ... to Spencer, West Virginia, ... where. he was first fondled' and then anally raped by Father Poandl during the night.” R. 68 at 19 (Trial Tr. 9/19/13) (Page ID #745). When discussing Barbara Harper’s testimony, the government emphasized that “[s]he gave her boy to the priest, a priest *370 that she had been taught to respect and to obey, the priest she had grown to trust because he gave them things.” Id. at 21 (Page ID # 747). And the prosecutor told the jury that Poandl “used his position as a priest to gain that trust, to exploit that trust, to break that trust, to betray that trust.” Id. at 22 (Page ID #748). The. government argued that, as a result of the rape, David Harper had a hard time trusting people. See id. at 28-29 (Page ID # 754-55).
In contrast, the government implied that Harper could trust the jury, and — problematically — could trust them to convict Poandl:
And, finally, ladies and gentlemen, I ask you about trust and trust that was requested. It’s requested by David Harper. What does David-and the Court just instructed you. What does David get out of this? He doesn’t get any money. Is it fame? It’s more notoriety? He told you he wanted justice and to protect other children from that man right there. That’s all he’s asking you, very simple. And to try to gain this trust as he requested from you he gets to put his entire life on public display.
Id. at 29-30 (Page ID # 755-56) (emphasis added).' The implication of the prosecutor’s remarks is that the jurors were the only people David Harper'could trust to do the right thing.
Through the trust theme, Poandl argues, the government not only encouraged the jury to sympathize with Harper, but also imposed a duty on the jury to return a guilty verdict because David trusted them to do it. In particular, Poandl cites the final portion of the government’s summation:
I would ask you to consider David Harper. What’s he gain out of this? What’s he win? Trust. Trust and courage, I guess. Courage is a word I would also want you to think about with David Harper. He would want you to show the same gourage. He is asking for your trust. He has exposed his life, and he would ask you to show that same courage.
Id. at 32 (Page ID # 758) (emphasis added). The implication was that David Harper finally could trust someone to be courageous enough to hold Poandl accountable; it was an appeal to the jury to restore David’s ability to trust people. Although this appeal to the jury’s sympathies and prejudices was not explicit, the implications were improper.
In addition, the prosecutor made numerous references to “boys,” which strongly implied that Poandl abused other boys. At various times throughout the closing argument, the prosecutor referenced “boys” — boys other than David Harper. At the beginning of the summation, the prosecutor told the jury that Poandl had “a custom of taking boys with him when he traveled out of state because he wanted to teach them things and to help him stay awake.” Id. at 20 (Page ID # 746) (emphasis added). He added, “I want you to remember that phrase.” Id. Later, the prosecutor told the jury to consider that “Father Poandl said[ ] that he takes boys....” Id. at 25 (Page ID # 751) (emphasis added). Toward the end of summation, the prosecutor again told the jury “to remember a phrase ... ‘The boy is to keep me awake.’ Every time, it was, ‘boys to keep me awake.’ That was his excuse, ‘boys to keep me awake’....” Id, at 32 (Page ID # 758) (emphasis added). The implication was that Poandl may have taken and abused other boys on these trips. Moreover, when the prosecutor argued about why David Harper was believable, he implied that the case was about “lives.” Id. at 30 (Page ID # 756). And, in rebuttal, the government again referenced other *371 children by quoting Poandl’s comment to the private investigator, “It’s typical for me to take ' boys on out-of-state trips.” The prosecutor continued, “[Poandl] called it ‘the Catholic experience.’ I don’t know what that is” Id. at 77 (Page ID # 803). The less-than-subtle implication of this comment was that the “Catholic experience” was the sexual abuse.
Although the government’s references to “boys” and “lives” may not have been improper in isolation, they were problematic in the context of the entire summation. The government referenced the trust Harper requested from the jury and reminded the jury that Harper “wanted justice and to protect other children from that man right there. That’s all he’s asking you, very simple.” Id. at 30 (Page ID # 756). This remark implied that David Harper was asking the jury to protect other children, and the government had insinuated throughout the argument that Poandl had done it before. To make matters worse, the government mentioned protecting other children a second time: “You seek that truth in the same collective memories of strangers and the victim, seeking only justice and the protection of other children.” Id. at 33 (Page ID # 759).
The government persuasively argues that the prosecutor was explaining that David Harper’s motivation for testifying was to protect other children in response to defense counsel’s numerous, attacks on Harper’s credibility. Appellee Br. at 54-56. David Harper’s credibility was a critical issue at trial. He was the only witness to the alleged sexual abuse. Poandl’s trial counsel spent an extraordinary amount of time questioning David Harper about the specifics of his memory and unsavory aspects of his.background that might make him less credible. See, e.g., R. 62 at 51-54 (Trial Tr. 9/17/13) (Page ID # 539-42) (cross-examination about David Harper’s drug use); id. at 64-65 (Page ID # 552-53) (cross-examination about past felonies and statements to the police). And Poandl’s closing argument emphasized many reasons for the jury to question Harper’s credibility. See R. 68 at 51-53 (Trial Tr. 9/19/13) (Page ID #777-79). When we consider the propriety of the prosecutor’s remarks, we must consider whether defense counsel “invited” the prosecutor’s responsive remarks. United States v. Henry, 545 F.3d 367, 381 (6th Cir.2008) (citing Young, 470 U.S. at 11-12, 105 S.Ct. 1038). The government may rehabilitate witnesses or respond to defense counsel’s attacks on a witness’s credibility. Davis, 514 F.3d at 615-Í6. Given that Poandl challenged Harper’s credibility extensively throughout trial, it was proper for the government to address David Harper’s credibility and motivation.
The trouble, however, is that these comments about other children were not isolated or obviously limited to discussions about Harper’s credibility; they were part of a broader argument about Poandl’s alleged custom of bringing boys on trips and the insinuation that he abused them, as well. See R. 68 at 20 (Trial Tr. 9/19/13) (Page ID # 746). Moreover, the prosecutor told the jury that David Harper was asking them for “justice and to protect other children from [Poandl].” Id. at 30 (Page ID # 756). Thus, the prosecutor’s remarks about other boys and the need to protect other children were improper.
B. The Golden Rule
Poandl also argues that the prosecutor encouraged the jury to sympathize with David Harper and vouched for David’s credibility. Appellant Br. at 54 n. 9, 58. Attempts “to ensure a conviction ... by appealing to the emotions of the jury and attempting to elicit sympathy for the vie- *372 tim” are improper. Moore v. Gibson, 195 F.3d 1152, 1171-72 (10th Cir.1999).
There are myriad appeals for sympathy for David Harper throughout the record. The most egregious example, which the district court noted was “this close to asking the jurors to put themselves in the position of this kid,” asked the jurors to “think about when [they] were ten.” R. 68 at 80 (Trial Tr. 9/19/13) (Page ID # 806). In particular, the prosecutor asked the jurors to think about what they would remember if they had been raped at the age of ten:
[T]hink about when you were ten. What stuck out to you if you were somewhere? ... More importantly, would it be the room that you were raped in? Would that be what you remember? Would the fact that a grown man who your mother and your father taught you to trust and taught you to obey, would you remember those details?
Id. These appeals for the jury to put themselves in David Harper’s position as a ten-year-old boy are plain violations of the “golden rule.” Golden-rule comments are “universally condemned because [they] en-couragef ] the jury to .‘depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.’ ” Lovett ex rel. Lovett v. Union Pac. R.R. Co., 201 F.3d 1074, 1083 (8th Cir.2000) (quoting Spray-Rite Serv. Corp. v. Monsanto Co., 684 F.2d 1226, 1246 (7th Cir.1982)); see also Ross v. Pineda, 549 Fed.Appx. 444, 451 (6th Cir.2013). Thus, the prosecutor’s comments were improper.
II. FLAGRANCY
We will not reverse a conviction because of improper comments unless the comments were also flagrant. Davis, 514 F.3d at 613. To determine whether the comments are “flagrant,” we consider four factors: “(1) the degree to which the conduct or remarks tended to mislead the jury or prejudice the defendant; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally put before the jury; and (4) the overall strength of the evidence against the defendant.” Boyd, 640 F.3d at 669 (citing United States v. Francis, 170 F.3d 546, 549 (6th Cir.1999)). Even when the prosecutor’s comments are not flagrant, we may reverse if defense counsel objected, the proof of guilt was not overwhelming, and the trial court did not give the jury a proper limiting instruction. Francis, 170 F.3d at 550.
There is .little doubt that the government’s insinuation that Poandl abused or would abuse others was prejudicial to Poandl given the prevalence of media coverage of numerous allegations of sexual abuse by priests. The Majority concludes that the prosecutor’s remarks were “isolated,” and therefore not flagrant. To the contrary, the remarks were extensive; the government used words “boys,” “lives,” “custom,” “every time,” or “children” at least thirteen times. It is also apparent that the government planned to say some of its improper remarks because both prosecutors used the trust theme and the statements about Harper’s trust in the jury were part of that theme. Moreover, even if the government did not plan to ask the jury to think about what they would remember in Harper’s situation, that comment is obviously improper; there are admonitions to avoid that line of argumentation in every trial-advocacy book on the market. See, e.g., Doug Norwood, Proseou-torial Misconduct in Closing Argument § 12.5 (2014) (“Using the ‘Golden Rule’ ”); Fred Lane, 4 Lane Goldstein Trial Technique § 23:33 (3d ed.2014); 75A Am.Jur.2d Trial § 547 (2015). Thus, the government’s improper remarks were prejudicial, *373 extensive, and deliberate. United States v. Carter, 236 F.3d 777, 783 (6th Cir.2001).
The more difficult question is whether the strength of the evidence against Poandl neutralizes the harm of the improper comments. The strength of the evidence of Poandl’s guilt depended entirely on David Harper’s credibility — the credibility of his claim that he went to Spencer, West Virginia, and his assertion that Poandl raped him. The government offered evidence to corroborate Harper’s version of events. The Fredettes testified that a boy accompanied Poandl to Spencer. Poandl also admitted that he remembered taking Harper on a trip, although he denied that it was the trip to Spencer.
On the other hand, Poandl offered evidence that undermined Harper’s version of events. Barbara’s and David Harper’s testimony that Poandl picked David up when it was sunny outside and before dinner does not square with the evidence that' Poandl delivered a speech at 7:00 in the evening on August 3, 1991. David Harper never mentioned attending that speech before embarking on the trip to West Virginia. Poandl even provides evidence that Barbara Harper attended the event. Her “August 1991” letter to Poandl, thanking him for his speech, references details from the talk: “We are seriously considering your challenge to be pilgrims.” R. 94 at 40 (Def.Ex.94-D) (Page ID # 1245). Poandl’s counsel also pointed to numerous inconsistencies in David Harper’s story. Moreover, nobody could corroborate the sexual abuse — as is often the case with this type of crime.
Although jury verdicts are - inherently opaque, one thing is clear: the juiy believed David Harper. What we cannot determine, however, is whether the jury found him credible because they felt obligated to find Poandl guilty out of sympathy for David Harper, or anger at the Catholic church, or because they thought Poandl abused other boys, or out of fear that Poandl would abuse other children. For that reason, I cannot conclude that the cumulative weight of the evidence was so strong to be sure that the prosecutor’s inflammatory remarks about other boys, the entreaty to the jury to show courage, the request to protect other children, and the violation of the Golden Rule did not affect the fairness or integrity of the proceedings. The government ignored its “duty to refrain from improper methods” and struck “foul blows.” Berger, 295 U.S. at 88, 55 S.Ct. 629. The' prosecutor’s closing remarks were so “exceptionally flagrant that [they] constitute[ ] plain error, and [are] grounds for reversal even if [Poandl] did not object....” Carter, 236 F.3d at 783. I dissent.