# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2273

_____

Regions Bank, Guardian of the     *
Estate of Kimberly Renea Smith,     *
    *
       Appellant,     *    Appeal from the United States
    *    District Court for the
    v.     *    Eastern District of Arkansas.
    *
BMW North America, Inc.; BMW     *        [PUBLISHED]
AG,     *
    *
       Appellees.     *

_____

Submitted: January 12, 2005
Filed: May 9, 2005

_____

Before LOKEN, Chief Judge, HANSEN and MURPHY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Kimberly Renea Smith was rendered a quadriplegic after she lost control of her BMW 318i on a downhill curve. The car struck the hillside, rolled over onto its roof, and eventually came to rest. The driver's-side frontal-impact airbag did not deploy.

Smith[1] sued BMW, alleging that the airbag's failure to deploy was the result of a defect or BMW's negligence, that she suffered enhanced injuries during the collision with the hillside as a consequence of the airbag's failure to deploy, and that BMW was liable for these enhanced injuries. After a trial, a jury rendered a general verdict in favor of BMW, and the district court[2] entered judgment on the jury verdict.

Smith appeals, arguing that the district court abused its discretion by permitting BMW to introduce evidence at trial relating to her blood alcohol level at the time of the car accident. For the reasons discussed below, we affirm.

I.

Prior to trial, Smith moved in limine to exclude evidence relating to her blood alcohol content at the time of the car accident. (D. Ct. Docket #245.) After a hearing, the district court denied Smith's motion, concluding that the evidence was relevant to BMW's theory "that it was the collision itself and the subsequent rollover of the vehicle that caused the injury." (Mot. Hr'g Tr. at 28-30.)

At trial, the parties stipulated that when Smith's blood was tested approximately two hours after the accident, her blood serum alcohol level was .136 percent. (Trial Tr. at 98.) BMW called Dr. Henry Simmons to testify. He noted that Smith's blood was tested a second time approximately four hours after the accident, and her blood serum alcohol level at that time was .096 percent. Based on this data, he estimated that Smith's blood serum alcohol level was .176 percent at the time of the accident. Dr. Simmons described a typical person with that level of alcohol in her

---

[1] In this opinion, we will refer to Smith and Regions Bank, the legal guardian of her estate, collectively as "Smith." We will refer to BMW North America and BMW AG collectively as "BMW."

[2] The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

blood as being emotionally unstable, having decreased inhibitions, having reduced ability to make critical judgments, having impaired memory, having impaired ability to understand information, and having decreased response time and muscular coordination. He opined that a typical person would have to drink at least four-and-a-third twelve-ounce cans of beer or six-and-a-half ounces of eighty-proof liquor to achieve that blood alcohol level. (Id. at 961-75.)

Dr. Simmons was the only defense witness who testified about Smith's blood alcohol content. BMW's remaining witnesses, two engineers and a doctor, testified about the car's impact with the hillside and subsequent rollover, the design of the car's airbag, and how Smith's injuries occurred.

At the jury instructions conference, Smith stated that she had no objections to the instructions or verdict forms prepared by the district court. (Id. at 1393.) In relevant part, the district court instructed the jury as follows.

The jury was instructed that Smith had asserted two separate grounds for recovery of damages. First, she should recover if she proved that BMW supplied the airbag in her car in a defective condition which rendered it unreasonably dangerous, and that the defective condition was a proximate cause of her injuries. Second, Smith could recover if she proved that BMW was negligent and that its negligence was a proximate cause of her injuries. Proximate cause was defined for the jury, and the jury was instructed that there could be more than one proximate cause of Smith's injuries. (Id. at 1415-16, 1418-19.)

The district court instructed the jury that, if it determined that Smith was without fault for the proximate cause of her injuries, she was entitled to recover damages in full. If the jury determined that both Smith and BMW were at fault, but that Smith's fault was less than BMW's fault, Smith was entitled to recover reduced damages. If the jury determined that BMW was without fault, or that Smith's fault

was greater than or equal to BMW's fault, Smith was not entitled to recover any damages. (Id. at 1422.)

Regarding intoxication, the district court instructed the jury that it was unlawful under Arkansas law for a driver with a blood alcohol level of .10 percent or greater to operate a motor vehicle. A violation of this statute did not necessarily constitute negligence, the jury was instructed, but did constitute evidence of negligence to be considered along with all of the other evidence in the case. An intoxicated person is held to the same standard of care as a sober person, the jury was told, and intoxication does not excuse the failure to exercise ordinary care. (Id. at 1417-18.)

Finally, the district court explained to the jury how it should fill out the general verdict forms. If the jury found for Smith under either of her two theories of liability, then it should return the form reading, "We, the jury, find for the plaintiff and fix her damages at __ dollars." If the jury found that Smith had failed to prove either of her two theories of liability, or that her fault was equal to or greater than BMW's fault, then it should return the form reading, "We, the jury, find for the defendants." (Id. at 1424.) The jury returned the latter verdict form. (Appellees' App. at A.)

II.

Smith argues that she is entitled to a new trial because the district court erred by admitting evidence relating to her blood alcohol level at the time of the accident. We will only grant a new trial if the district court clearly abused its discretion by admitting the evidence, which requires a showing that the error prejudicially influenced the outcome of the trial. See Lovett v. Union Pac. R.R. Co., 201 F.3d 1074, 1080 (8th Cir. 2000). In this case, as in Lovett, we do not reach the question whether the district court properly applied Arkansas law by admitting the evidence because Smith has failed to prove that the outcome of the trial was prejudiced by the admission of the evidence. See id.

To determine whether evidence of Smith's blood alcohol level prejudicially influenced the outcome of the trial, we look to the jury's verdict. See id. As noted above, the verdict reads in its entirety: "We, the jury, find for the defendants."

"We have no way of determining from this general verdict why the jury found [BMW] not liable." Id. It is possible, as Smith argues, that the jury reached this verdict by assigning fault to Smith on the basis of her alcohol consumption, comparing her fault to BMW's fault, and concluding that Smith's fault was equal to or greater than BMW's fault. However, there are two other possibilities that are at least as likely, neither of which rests on the evidence of Smith's blood alcohol content. First, BMW put on evidence at trial from which the jury could reasonably conclude that there was no defect or negligence because the force and direction of the car's impact into the hillside were insufficient to trigger deployment of a properly operating driver's-side frontal-impact airbag. Second, BMW put on evidence at trial from which the jury could reasonably conclude that Smith's injuries occurred during the rollover–when deployment of the airbag would not have helped, as Smith conceded–rather than during the impact of the car into the hillside.

Evidence of Smith's blood alcohol level was by no means the centerpiece of BMW's defense. In the eight-day jury trial, Dr. Simmons' entire time on the witness stand was approximately one hour and fifteen minutes. "[T]he case was submitted on a general verdict form, so we can only speculate whether [Smith] was prejudiced. Speculation, however, is not a sufficient basis for finding a plaintiff's substantial rights were affected, and we will not set aside the jury's verdict in this case." Id. Accordingly, we affirm the judgment of the district court.

_____