# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2353

_____

James Coterel; Crystal Naylor

*Plaintiffs - Appellants*

v.

Dorel Juvenile Group, Inc., doing business as Safety 1st

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: February 9, 2016
Filed: July 5, 2016

_____

Before RILEY, Chief Judge, LOKEN and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

James Coterel and Crystal Naylor's (appellants) twenty-three-month-old son, Jacob Coterel, tragically drowned in a pond after climbing out of his crib and leaving their home in the middle of the night. The appellants sued Dorel Juvenile Group, Inc. (Dorel) for wrongful death under Missouri law, alleging product liability and negligence arising from a doorknob cover Dorel designed and manufactured and the appellants used. See Mo. Rev. Stat. § 537.080 (wrongful death). After a six-day trial,

a jury unanimously found Dorel was not liable for Jacob's death. The appellants moved for a new trial, see Fed. R. Civ. P. 59(a)(1)(A), which the district court[1] denied. The appellants appeal, and we affirm.[2]

## I.    BACKGROUND

In the fall of 2008, the appellants received a doorknob cover, designed and manufactured by Dorel, as a gift at a baby shower for Jacob. As Jacob got older, the appellants began to use the doorknob cover on the front door of their home to stop Jacob from opening the door.[3] Months later and a week or two before the accident, the appellants also installed a chain lock on the front door when Jacob began to get out of his crib on his own.

On the night of November 28, 2010, Naylor took Jacob to the emergency room with a fever. By the time they returned home around midnight, Coterel and Skylin, the appellants' daughter, had already gone to bed. Naylor put Jacob to bed in his crib and spoke with her brother, who was visiting, before going to bed herself. Naylor testified she locked the tab lock on the doorknob when she went to bed, but forgot to latch the new chain lock.

At approximately 6:00 a.m. the next morning, Coterel awoke to find the front door open and Jacob missing. After a frantic search, he found Jacob floating face

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

[2]The district court derived jurisdiction from 28 U.S.C. § 1332(a)(1); our jurisdiction derives from 28 U.S.C. § 1291.

[3]The doorknob cover consists of two translucent halves that snap together over the doorknob. The cover was designed to spin freely unless the user pressed two flexible pads on the cover simultaneously, thus making it more difficult for a young child to open the door.

down in a pond fifty yards away. Efforts to revive Jacob proved unsuccessful, and he died at the hospital a few hours later. The appellants testified that when they returned home, they discovered the doorknob cover on the floor in two pieces.

The Missouri Department of Social Services assigned Deborah Adair to investigate Jacob's death. On November 30, 2010, Adair interviewed Coterel and Naylor about the accident. Adair noted in her written investigation report that Coterel told her Jacob had learned how to defeat the doorknob cover, which prompted the appellants to install the chain lock to keep Jacob in the home. At trial, Coterel denied making that statement, testifying Adair may have "misinterpreted" him. Investigators concluded Jacob's death was a tragic accident.

On October 16, 2013, the appellants sued Dorel for wrongful death based on theories of product liability and negligence. Dorel answered, asserting, among others, affirmative defenses of comparative fault and sole cause.[4] On February 3, 2015, about a month before trial, Dorel moved the district court pursuant to Federal Rule of Civil Procedure 8(c)(2) to treat its comparative-fault defense as a counterclaim for contribution. The district court denied the motion, indicating by text entry that the time to bring a counterclaim under the scheduling order had expired.

Relying on that ruling and Teeter v. Missouri Highway & Transportation Commission, 891 S.W.2d 817, 819 (Mo. 1995) (en banc), in which the Missouri Supreme Court decided a defendant could not invoke comparative-fault principles to reduce its liability "on account of the fault of one of several beneficiaries of a wrongful death action," the appellants moved in limine to exclude any reference or

---

[4]Under Missouri law, a defendant can argue "the acts of one other than the defendant were the sole cause of the accident." Simpson v. Smith, 771 S.W.2d 368, 373 (Mo. Ct. App. 1989).

argument relating to any comparative fault of the appellants. The district court granted the motion.

Before trial, the parties disputed whether evidence of the appellants' failure to secure the chain lock and appellants' prior knowledge of Jacob's ability to defeat the doorknob cover was nonetheless relevant to Dorel's defense. In support of exclusion, the appellants argued their actions were, at most, contributing causes Dorel could not raise—not sole cause. The appellants further argued admitting such evidence would be prejudicial because the verdict form did not provide a mechanism for the jury to apportion fault. Dorel maintained the evidence was relevant to its sole-cause defense and central to its ability to controvert the appellants' product-liability and negligence claims.

The district court ruled the evidence admissible and consistently overruled the appellants' relevance objections at trial. The district court also overruled the appellants' hearsay objection to Adair's testimony regarding Coterel's statement that Jacob knew how to defeat the doorknob cover.

At trial, the appellants urged the jury to find Dorel "directly caused or directly contributed to cause" Jacob's death. The appellants argued the doorknob cover was defective and unreasonably dangerous under normal use and that Dorel negligently designed and sold the cover despite test results that showed the cover was defective.

Dorel strongly denied responsibility for Jacob's death. Specifically, Dorel denied the doorknob cover was defective or unreasonably dangerous when used properly and even questioned whether the door was closed that night and whether the cover was on the doorknob at all. Dorel emphasized the packaging for the cover warned it should not be used without adult supervision and use should stop once the child could defeat it. In closing, Dorel argued neither the appellants nor anyone else would think a low-cost doorknob cover was a substitute for a lock and the appellants

simply failed to use the chain lock they actually had been relying upon since learning Jacob could defeat the doorknob cover.

On March 10, 2015, the jury unanimously found Dorel was not liable for Jacob's death and rendered a general verdict in Dorel's favor. The district court entered judgment the next day. On April 7, 2015, the appellants moved for a new trial, arguing Dorel "presented impermissible and improper evidence during the course of the trial which tainted the jury's verdict." The district court denied the motion, and the appellants appeal.

## II. DISCUSSION

The appellants assert the district court erred in admitting evidence Naylor failed to secure the chain lock the night of Jacob's death and Coterel knew before that night that Jacob could defeat the doorknob cover. As the appellants see it, those evidentiary errors warrant a new trial because they tainted the jury verdict. See Fed. R. Civ. P. 59(a)(1)(A). We review the district court's evidentiary rulings and its denial of a new trial for clear and prejudicial abuse of discretion. See Burris v. Gulf Underwriters Ins. Co., 787 F.3d 875, 878, 880 (8th Cir. 2015). "[T]he key question [is] whether a new trial is necessary to prevent a miscarriage of justice." Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 462 (8th Cir. 2013). We will not disturb the jury's verdict unless the appellants show "the district court clearly abused its discretion by admitting the evidence" and "the error[s] prejudicially influenced the outcome of the trial." Regions Bank v. BMW N. Am., Inc., 406 F.3d 978, 980 (8th Cir. 2005); see also Fed. R. Civ. P. 61 (explaining "no error in admitting or excluding evidence . . . is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order" unless the error "affect[s] any party's substantial rights").

The appellants have failed to make that crucial showing. Even if we accept, for purposes of argument, the appellants' alleged evidentiary errors, the appellants are

unable to establish those "error[s] prejudicially influenced the outcome of the trial." Regions Bank, 406 F.3d at 980.

"To determine whether the evidentiary errors discussed above prejudicially influenced the outcome of the case, we look to the jury's verdict." Qualley v. Clo-Tex Int'l, Inc., 212 F.3d 1123, 1131 (8th Cir. 2000). The verdict form in this case, which followed the verdict form the appellants' submitted, simply asked the jury to determine whether it found in favor of the appellants or Dorel on the appellants' wrongful-death claim.[5] The jury unanimously found for Dorel. "We have no way of determining from this general verdict why the jury found [Dorel] not liable." Lovett ex rel. Lovett v. Union Pac. R.R., 201 F.3d 1074, 1080 (8th Cir. 2000).

Contrary to the appellants' assertions, on this record, we cannot "know" the jury used the challenged evidence for an improper purpose and impermissibly compared fault in some way when deciding Dorel was not liable for Jacob's death. To prevail on their product-liability theory, the appellants had to prove:

---

[5]The general verdict form in this case directed the jury to:

Complete this form by writing in the name required by your verdict.

 On the claim of the Plaintiffs James Coterel and Crystal Naylor for the death of Jacob Coterel against defendant Dorel Juvenile Group, Inc., we, the undersigned jurors, find in favor of:

| | | |
|---|---|---|
| Plaintiffs James Coterel And Crystal Naylor | or | Defendant Dorel Juvenile Group, Inc. |

The jury entered the word "Defendant." There were no interrogatories or other findings that might have indicated the basis for the verdict.

(1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold.

Columbia Mut. Ins. Co. v. Epstein, 239 S.W.3d 667, 671 (Mo. Ct. App. 2007). To prove negligence, the appellants had "to establish [Dorel] had a duty to protect [Jacob] from injury, [Dorel] failed to perform that duty, and" Dorel's failure proximately caused Jacob's death. Jarrett v. Jones, 258 S.W.3d 442, 448 (Mo. 2008) (en banc).

In finding Dorel was not at fault, the jury, based on the evidence adduced at trial, reasonably might have found, among other things, "there was no defect or negligence" or that appellants failed to prove causation or some other element of their claims. Regions Bank, 406 F.3d at 980. In light of the general verdict in this case, the appellants are left to guess about the course and content of the jury deliberations and "can only speculate whether" any alleged evidentiary error actually prejudiced them. Id. at 980-81. "Speculation, however, is not a sufficient basis for finding [the appellants'] substantial rights were affected, and we will not set aside the jury's verdict in this case." Id. at 981; see also Lovett, 201 F.3d at 1080.

## III. CONCLUSION
We affirm.

_____