# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-3440

———————————————

Dustin Reinard, Individually and as Parent of B.R. and K.R.; Misty Reinard

*Plaintiffs - Appellants*

v.

Crown Equipment Corporation

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

——————————

Submitted: September 24, 2020
Filed: December 30, 2020

——————————

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

Dustin and Misty Reinard brought a products liability action against forklift manufacturer Crown Equipment Corp. ("Crown"). After the district court[1] admitted

———————————

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, now retired.

evidence over the Reinards' objections *in limine*, the jury returned a verdict for Crown, and the district court denied the Reinards' motion for a new trial. We affirm.

## I.

On July 22, 2014, Dustin Reinard was injured while operating a stand-up forklift manufactured by Crown. By design, the forklift's operator compartment lacked a door. As Reinard was backing the forklift in a warehouse, the side of the forklift where the entrance was located struck a pole. Because Reinard's left foot was outside the operator compartment at the time of impact, it was crushed against the pole, and Reinard's left leg had to be amputated.

The Reinards, citizens of Iowa, sued Crown in Iowa state court. Crown, which is incorporated and has its principal place of business in Ohio, removed the case to federal court on the basis of diversity jurisdiction. *See generally* 28 U.S.C. § 1332(a). In their complaint, the Reinards alleged that the forklift's design was defective because it omitted a door. Crown contested this allegation on the ground that the risks of adding a door outweighed the utility. According to Crown, the presence of a door leads to more serious injuries in off-dock and tip-over accidents by preventing the operator from escaping the falling forklift.

Before trial, the Reinards filed a motion *in limine* to prevent Crown from introducing certain video simulations of off-dock and tip-over accidents in forklifts with doors. The district court denied the motion. Prior to *voir dire*, the district court permitted each party a "mini-opening" during which that party could display three "visual aids" to the prospective jurors, and Crown displayed photographs that were taken while some of the simulations were being filmed. Crown also referenced the simulations during its opening statement at trial. But it was the Reinards who first introduced the simulations as evidence, showing them to the jury during their case-in-chief. In their opening brief on appeal, the Reinards explained that, "because [their] pretrial efforts to have [the simulations] excluded were denied, reasonable

litigation strategy demanded that [they] try to mitigate the damage caused by the admission of the evidence by discussing it first."

The jury returned a verdict for Crown, and the district court denied the Reinards' motion for a new trial. The Reinards appeal, challenging the district court's admission of the simulations and denial of their motion for a new trial.

**II.**

Typically, we review for abuse of discretion both "the district court's admission of evidence," *United States v. Young*, 644 F.3d 757, 759 (8th Cir. 2011), and "the district court's denial of a motion for a new trial," *Jones v. Swanson*, 341 F.3d 723, 732 (8th Cir. 2003). But if the appellant forfeited his objections to a ruling, then we review the ruling only for plain error. *Young*, 644 F.3d at 759 n.2. And if the appellant waived his objections to a ruling, then we do not review the ruling at all. *Id.* As the Supreme Court has explained, forfeiture is the "failure to make the timely assertion of a right," whereas waiver is the "intentional relinquishment or abandonment of a known right." *Hamer v. Neighborhood Hous. Servs.*, 583 U.S. ---, 138 S. Ct. 13, 17 n.1 (2017).

In *Huff v. Heckendorn Manufacturing Co.*, we held that by "intentionally plac[ing evidence] in the record," a party "waive[s] any claim of error" in the admission of that evidence. 991 F.2d 464, 467 (8th Cir. 1993). We held that this rule applies even if the party had filed a motion *in limine* raising objections to the admission of the evidence; even if the trial court in its ruling on that motion *in limine* had "made it abundantly clear" that it "was overruling those objections"; and even if the opposing party had referred to the evidence earlier at trial, leaving little doubt that it would have introduced the evidence had the formerly objecting party not done so first. *Id.* at 465, 467. If under these circumstances the formerly objecting party adopts the "strategy" of "attacking the issue head-on and introduc[ing the] evidence" itself, then that party "waives any objection that [it] may have had" to the admission of the evidence. *Id.* at 468; *see also Ohler v. United States*, 529 U.S. 753, 755 (2000)

-3-

("Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted."); *Canny v. Dr. Pepper/Seven-Up Bottling Grp.*, 439 F.3d 894, 904 (8th Cir. 2006) (holding that by "preemptively . . . introduc[ing]" evidence at trial, the defendant "waived its challenge to the admission of the evidence on appeal").

Here, the Reinards were the first to introduce the video simulations. The Reinards point out, correctly, that they had filed a motion *in limine* to exclude the simulations, the district court had denied that motion, and Crown had referred to the evidence in its opening statement, leaving little doubt that Crown would have introduced the evidence had the Reinards not done so first. But *Huff* held that, even in these circumstances, "intentionally plac[ing evidence] in the record . . . waive[s] any claim of error" in the admission of the evidence. 991 F.2d at 467. Therefore, the Reinards waived their objections to the district court's admission of the video simulations.[2]

The Reinards present three arguments against our application of *Huff*. First, they argue that *Huff* is no longer good law. In 2000, Rule 103 of the Federal Rules of Evidence was amended to provide that "[o]nce the court rules definitively on the record—either before or at trial—a party need not renew an objection . . . to preserve a claim of error for appeal." Fed. R. Evid. 103(b). The Reinards argue that this amendment abrogated *Huff* by making a definitive pretrial ruling that evidence is admissible sufficient to preserve objections to the admission of the evidence for appeal.

---

[2]In their briefs, the Reinards sometimes frame their evidentiary challenge as a challenge to the district court's denial of their motion *in limine* to exclude the simulations. Reframing the Reinards' challenge in these terms would not change our analysis: the "waiver rule" applies equally to objections to the admission of evidence at trial and objections to pretrial rulings that the evidence was admissible. *See Ohler*, 529 U.S. at 755-57 (holding that "appellate review of an *in limine* ruling" that evidence is admissible is unavailable to the party that introduced the evidence).

-4-

The Reinards misread Rule 103(b). On its face, Rule 103(b) merely provides that once the court has definitively rejected an objection to the admissibility of evidence, failure to renew the objection does not constitute a forfeiture of the objection. It does not follow that preemptively introducing the evidence does not constitute a waiver of the objection. The Advisory Committee Notes on the 2000 amendment to Rule 103 make this very point, emphasizing that "[t]he amendment does not purport to answer whether a party who objects to evidence that the court finds admissible in a definitive ruling, and who then offers the evidence to 'remove the sting' of its anticipated prejudicial effect, thereby waives the right to appeal the trial court's ruling."[3]

Indeed, *Huff* pointed out the compatibility between its holding and the substance of what is now Rule 103(b). By the time we decided *Huff* in 1993, we had already recognized an exception to the general rule that "a motion in limine does not preserve error for appellate review" for cases in which "the district court made a definitive pre-trial ruling that affected the entire course of the trial." *Sprynczynatyk v. Gen. Motors Corp.*, 771 F.2d 1112, 1118 (8th Cir. 1985). The plaintiffs in *Huff* appeared to invoke this exception, protesting that the trial court's pretrial rulings had

---

[3]The dissent objects to our reading of Rule 103(b), noting that the rule speaks of "preserv[ing] . . . for appeal" rather than avoiding "forfeiture." *Post*, at 9. The dissent perceives a difference between these phrases, insisting that "[n]ot forfeiting an objection is different than preserving it." *Id. Contra Muiruri v. Lynch*, 803 F.3d 984, 987 (8th Cir. 2015) ("An error . . . is forfeited—that is, not preserved for appeal—by the failure to make timely assertion of the right." (internal quotation marks omitted)). Although we fail to see the distinction, we need not quibble over semantics. While Rule 103(b) undoubtedly provides that failure to renew an objection after a definitive ruling does not constitute failure to preserve the objection (i.e., forfeiture), it simply does not address what might constitute a waiver of the objection. For example, suppose that, after a definitive ruling, the objecting party changes its mind and decides to stipulate to the admissibility of the evidence. In that case, we presume, the party has waived its objection, Rule 103(b) notwithstanding. *See Blodgett v. Comm'r*, 394 F.3d 1030, 1040 (8th Cir. 2005) (indicating that stipulation constitutes waiver). Likewise if the party "decide[s] preemptively to introduce" the evidence. *Canny*, 439 F.3d at 904.

-5-

"made it abundantly clear that the nature of [the plaintiffs'] objections were known and that the trial court was overruling those objections." 991 F.2d at 467. We did not deny that the exception existed or that it may have excused the plaintiffs from having to renew their objection at trial to avoid forfeiting it on appeal. Instead, we held the exception inapplicable because the plaintiffs' "strategy" of "attacking the issue head-on and introduc[ing the] evidence" first "waive[d] any objection that [they] may have had." *Id.* at 467-68. Rule 103(b) merely confirms what our caselaw had already implied and *Huff* explicitly acknowledged; namely, that the plaintiffs may have had an objection that they need not have renewed at trial to avoid forfeiting on appeal. As *Huff* points out, this is consistent with holding that the plaintiffs waived any such objection by preemptively introducing the evidence.

Furthermore, the notion that the 2000 amendment to Rule 103 abrogated *Huff* does not square with our 2006 decision in *Canny*, for two reasons. First, *Canny* reiterated that "a party introducing evidence" has "waived its challenge to the admission of the evidence." 439 F.3d at 904. If the 2000 amendment to Rule 103 abrogated *Huff*, then this statement would have been false. Second, although *Canny* did not cite *Huff*, it did cite *Ohler*, 529 U.S. at 755, in which the Supreme Court held that "a party introducing evidence" has "waived his objection" to the admission of the evidence and therefore "cannot complain on appeal that the evidence was erroneously admitted." *See Canny*, 439 F.3d at 904. But if the 2000 amendment to Rule 103 abrogated *Huff*, then it also abrogated *Ohler*, which was decided on May 22, 2000, roughly six months before the amendment to Rule 103 took effect on December 1, 2000. Therefore, if the 2000 amendment to Rule 103 abrogated *Huff*, then *Canny*'s reliance on *Ohler* would have been misplaced. The notion that the 2000 amendment to Rule 103 abrogated *Huff* thus conflicts with both *Canny*'s reasoning and *Canny*'s reliance on *Ohler*. Consequently, even if Rule 103(b) were susceptible to an interpretation on which it abrogated *Huff*, our decision in *Canny* would foreclose this interpretation.

Second, the Reinards argue that *Huff* is factually distinguishable from this case. As the Reinards point out, by the time they introduced the simulations, Crown

had not only referenced the simulations during its opening statement at trial but also displayed photographs from the filming of some of the simulations to the prospective jurors during its "mini-opening" before *voir dire*.

Although Crown's use of the photographs during its "mini-opening" does mark a difference between this case and *Huff*, this difference is immaterial. Crown did not play the video simulations or even excerpts from the video simulations. Indeed, Crown did not even display freeze-frames from the video simulations. Crown merely displayed still photographs—no more than three—that were taken while some of the simulations were being filmed. We view this as analogous to referencing the simulations during an opening statement. And *Huff* held that preemptively introducing evidence constitutes a waiver of any objection to the evidence's admission even if the opposing party referenced the evidence in its opening statement. 991 F.2d at 465, 467; *see also Jordan v. Binns*, 712 F.3d 1123, 1134-35 (7th Cir. 2013) (indicating that using a demonstrative during an opening statement is not the same as introducing it as evidence). Therefore, the Reinards' preemptive introduction of the simulations constitutes a waiver of their objections to the simulations' admission even though Crown displayed photographs from the filming of some of the simulations during its "mini-opening."

Third, the Reinards argue that even if they waived their objections to the admission of the simulations, we should review the district court's admission of the simulations for plain error. This contention finds support in *Spencer v. Young*, where we proceeded to "review the district court's evidentiary ruling for plain error" after concluding that the appellant had "waived his right to appeal the issue" by "introduc[ing] the . . . evidence" at trial. 495 F.3d 945, 950 (8th Cir. 2007).

On this point, however, *Spencer* is contradicted by prior circuit precedent holding that waiver, as distinguished from forfeiture, precludes appellate review. *See, e.g.*, *Blodgett*, 394 F.3d at 1040 (holding that waiver eliminates "any right to appellate plain error review"). "[F]aced with conflicting panel opinions," we must follow "the earliest opinion." *Mader v. United States*, 654 F.3d 794, 800 (8th Cir.

-7-

2011) (en banc). Accordingly, we refrain from reviewing the district court's admission of the simulations for plain error.

Having addressed the district court's admission of the simulations, we turn to the district court's denial of the Reinards' motion for a new trial. The Reinards' only argument that the district court abused its discretion in denying their motion for a new trial is based on the claim that the admission of the simulations was prejudicial error. As we have explained, the Reinards waived this claim by preemptively introducing the simulations. Therefore, they have failed to show that the district court abused its discretion in denying their motion for a new trial.

## III.

For the foregoing reasons, we affirm.

GRASZ, Circuit Judge, dissenting.

The district court correctly characterized Crown's experimental evidence (its videos) as "the most critical in the case." And it forthrightly stated that if it improperly admitted that evidence, doing so "was prejudicial" and would "entitle[] the Reinards to a new trial." Several issues, then, must be addressed to decide if the Reinards are entitled to a new trial. Specifically, they need favorable answers to three questions: (1) Did they preserve their challenge to the videos' admission?; (2) Was that admission legal error (and thus, an abuse of discretion)?; and (3) Was that error harmful? The court answers "no" to the first question and ends its analysis. Because I would answer "yes" to each question, I dissent.

A party preserves an evidentiary error with a timely, specific objection about an error affecting its substantial rights. Fed. R. Evid. 103(a)(1). "Once the court rules definitively on the record—either before or at trial—a party need not renew an objection . . . to preserve a claim of error for appeal." Fed. R. Evid. 103(b). Today, this court concludes that the Reinards waived their ability to challenge error because

-8-

they introduced Crown's videos—videos of crash-test dummies dressed in overalls slamming their heads or backs onto hard surfaces—first.[4] *Ante* at 4. To reach that conclusion, the court treats Rule 103(b) as unhelpful to the Reinards and relies on cases which, I believe, are distinguishable.

The court explains that "[o]n its face, Rule 103(b) merely provides" that a definitively-rejected-yet-unrenewed objection "does not constitute a forfeiture[.]" *Ante* at 5. However, I read the plain text (which says nothing about forfeiture) to mean that a definitive evidentiary ruling preserves a party's right to appeal that ruling. *See* Fed. R. Evid. 103(b). As the court notes, the Supreme Court has defined "forfeiture" as "the failure to make the timely assertion of a right." *Ante* at 3. Reading "forfeiture" into Rule 103(b) seems to render the words "preserve . . . for appeal" meaningless if those words somehow mean that a party "did not fail to timely assert its right to object." Not forfeiting an objection is different than preserving it.[5]

---

[4]In deciding that waiver renders the claim of error unreviewable, the court concludes that the Reinards cannot receive plain-error review. In reaching that conclusion, the court relies on the waiver-versus-forfeiture distinction that stems from a seminal criminal case, *United States v. Olano*, 507 U.S. 725, 732–36 (1993), which interprets Fed. R. Crim. P. 52(b), the plain-error standard for criminal cases. *Ante* at 3, 7. While a prior panel seems to have extended *Olano*'s plain-error review standard to at least some civil cases, it did so only when error was *not* preserved. *See Wiser v. Wayne Farms*, 411 F.3d 923, 927 (8th Cir. 2005) (recognizing that "[t]he law in our circuit on the plain-error test in a civil context . . . [wa]s not entirely clear" but deciding "*an unpreserved error* in the civil context must meet at least the *Olano* standard to warrant correction") (emphasis added)).

[5]I believe that this distinction between error-preservation and forfeiture-avoidance tracks Supreme Court guidance on the difference between waiver and forfeiture. *See Olano*, 507 U.S. at 733 ("Waiver is different from forfeiture."). The difference between waiver and forfeiture matters a great deal to parties whose appeals we cannot hear.

Along similar lines, I agree that the advisory committee did not decide if a party can challenge a definitive, unfavorable evidentiary ruling after offering the same evidence (that it tried but failed to keep out) to "remove the sting" of that evidence's "anticipated prejudicial effect[.]" *See* Fed. R. Evid. 103, cmt. to 2000 amendments. But in explaining what it *did not decide*, the advisory committee *only* cited cases when parties tried to "remove the sting" from their *own* actions (and mostly with prior-conviction evidence). *See id*. (citing cases).[6]

Further, even if the cases relied upon by the court can be harmonized with the amended Rule 103(b), those sting-removing cases all dealt with evidence of a party's own conduct. *See Huff v. Heckerndorn Mfg., Co.*, 991 F.2d 464, 467 (8th Cir. 1993) (after an unfavorable ruling on evidence about his own negligent use of a product, a mechanic preemptively introduced evidence to show the manufacturer failed to warn buyers about product use); *Ohler*, 529 U.S. at 755 (after an unfavorable ruling that would allow the government to use a prior conviction for impeachment purposes, testifying criminal defendant introduced that evidence on direct examination); *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 904 (8th Cir. 2006) (after a favorable ruling limited an employee's use of an employer's settlement letter to the contents of the letter, the employer preemptively introduced that letter's contents on direct examination).

---

[6]*See United States v. Fisher*, 106 F.3d 622, 627–29 (5th Cir. 1997) (criminal defendant did not waive error by introducing prior-conviction on direct examination after government received favorable ruling to use that evidence on cross-examination), *abrogated by Ohler v. United States*, 529 U.S. 753, 755 (2000) ("[W]e conclude that a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error."); *Judd v. Rodman*, 105 F.3d 1339, 1340–42 (11th Cir. 1997) (plaintiff introduced evidence about her own sexual history, plastic surgery, and work history when she alleged defendant wrongfully transmitted a sexually-transmitted disease to her); *Gill v. Thomas*, 83 F.3d 537, 539–41 (1st Cir. 1996) (plaintiff introduced evidence about his prior criminal convictions in excessive force suit); *United States v. Williams*, 939 F.2d 721, 722–23 (9th Cir. 1991) (criminal defendant introduced evidence about his prior criminal conviction).

That is not what happened here. Instead, the evidence went straight to the merits. To prevail, the Reinards needed to prove all six design-defect elements. *See* Verdict Form at 1, ECF No. 106, July 26, 2018 ("On the Reinards' 'design defect' claim, as explained in Instruction No. 5, in whose favor do you find?"); *see also* Jury Instrs. at 12–14, ECF No. 107, July 30, 2018 (providing six elements for design-defect claim). Of those six elements, four hinged on whether the forklift door presented "a reasonable alternative safer design[.]" *See* Jury Instrs. at 12–13, ECF No. 107, July 30, 2018 (elements two through five). So, deciding against the door as an alternative safer design would also decide the case against the Reinards.

Two times before the Reinards presented any evidence, Crown emphasized how it would use the videos. First, in its mini-opening, Crown showed the jury pictures of the testing used in *its* videos. Then, in its opening statement, Crown told the jury that *its* videos would show that adding a door would create "a fatal risk" to operators seven times out of ten. The Reinards' expert addressed that evidence to discredit Crown's already-presented central defensive theory (that a door would kill operators) which also contradicted the Reinards' theory of the case (that a door would not). *Cf.* L. Timothy Perrin, *Pricking Boils, Preserving Error: On the Horns of a Dilemma After Ohler v. United States*, 34 U.C. Davis L. Rev. 615, 670 (2001) ("*Ohler* addresses the disclosure of a prior conviction under Rule 609 and is particularly concerned with the prosecution's right to decide for itself whether to use the conviction during cross-examination. Those concerns do not exist with evidence that relates to the merits of the dispute[.]").

Because I conclude waiver does not apply here, I would reach the merits of this case.

"[W]e have explained that 'experimental evidence falls on a spectrum and the foundational standard for its admissibility is determined by whether the evidence is closer to simulating the accident or to demonstrating abstract scientific principles.'" *Dunn v. Nexgrill Indus., Inc.*, 636 F.3d 1049, 1055 (8th Cir. 2011) (quoting

*McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1402 (8th Cir. 1994)). We have also explained that "[a] court may properly admit experimental evidence if the tests were conducted under conditions *substantially similar* to the actual conditions." *McKnight*, 36 F.3d at 1401 (citing *Champeau v. Fruehauf Corp.*, 814 F.2d 1271, 1278 (8th Cir. 1987) (cleaned up)). "[W]here the experimental tests do not purport to recreate the accident, but instead . . . are used to demonstrate only general scientific principles, the requirement of substantially similar circumstances no longer applies." *Id.* (citing *Champeau*, 814 F.2d at 1278). In *McKnight*, we connected the "foundational standard" for admissibility to the need to avoid juror confusion. *Id.* We predicted that jurors were not likely to confuse abstract demonstrations of scientific principles with events on trial, but we also acknowledged that "more troublesome cases" could be "rife with the risk of misunderstanding" of experimental evidence that demonstrates "some [scientific] principles of some kind . . . but in a fashion that looks very much like a recreation of the event that gave rise to the trial." *Id.* (cleaned up) (quoting *Fusco v. Gen. Motors Corp.*, 11 F.2d 259, 264 (1st Cir. 1993)).

The district court did not apply the foundational admissibility standard for experimental-evidence. *Compare McKnight*, 36 F.3d at 1401, *with* Doc. 79 at 24, 31. On appeal, Crown argues that it used the videos not as recreations but to show the "forces generated" during certain accidents (i.e., how hard and fast the forklifts would fall or tip over). In turn, its experts relied on those videos to testify that if operators stayed inside forklifts during accidents, the "forces" could cause "serious injury or death." Crown, however, stops short of describing the crashes in its videos as illustrating general principles about physics (or any other scientific discipline).

I am skeptical any juror needed *any* help (let alone, a scientific demonstration) to know that a fast crash into a hard surface could cause serious injury or death. So then, what scientific principle did *the dummies* demonstrate? Under *McKnight*, the district court needed to ask. *McKnight*, 36 F.3d at 1401. Crown does not suggest that the dummies were connected to a scientific principle. So, without an articulated scientific principle, and with no argument about substantial similarity, that

-12-

experimental evidence could not come in. *Id.* Because the district court admitted that evidence without applying *McKnight*, it based its ruling on an erroneous view of the law and abused its discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."); *see also* Doc. 79 at 24, 31.

We will only disturb the jury's verdict if the evidentiary error affected the Reinards' substantial rights. *See* Fed. R. Civ. P. 61 (harmless-error review). We look at the jury's verdict to decide if the challenged evidence prejudiced the Reinards and affected their substantial rights. *See, e.g.*, *Coterel v. Dorel Juvenile Grp., Inc.*, 827 F.3d 804, 808 (8th Cir. 2016).

As mentioned, the design-defect verdict required the jury to unanimously agree that a safety door was a reasonable alternative safer design. *See* Verdict Form at 1, ECF No. 106, July 26, 2018 (directing the jury to Instruction No. 5 to decide the design-defect claim); *see also* Jury Instrs. at 12–14, ECF No. 107, July 30, 2018 (providing six elements for design-defect claim). A "no" answer would decide the case for Crown. *Id.* The verdict does not require speculation about how Crown's evidence impacted the outcome. *Cf. Coterel*, 827 F.3d at 808.

Nor did the district court. It was "virtually certain that this evidence substantially affected the jury's deliberations and verdict." *See* Order Den. Pls.' Mot. New Trial at 2, ECF No. 115, Oct. 15, 2018. It characterized the videos as "the foundation of Crown's defense" as well as "the most critical" evidence in the case "because many of Crown's trial witnesses relied on [it]." In recognition of this, when the district court denied a new trial, it candidly stated that if it had improperly admitted Crown's evidence, then that error "was prejudicial and entitle[d] the Reinards to a new trial."

-13-

If Federal Rule of Civil Procedure 61's harmless-error standard applies here, as I conclude it does, we should reverse because "justice requires" it and the errors "affect[ed]" the Reinards' "substantial rights."

_____